311-0607 WISAM 1 Inc. Appellant Daniel O'Day v. Illinois Liquor Control Commission 311-0607 WISAM 1 Inc. Appellant Daniel O'Day I'm Daniel O'Day and I'm here for the appellant WISAM 1. I was the... I'm sorry. I forgot. Justice Holdridge had a conflict. This is being taped. He will be listening to the tapes and will fully participate in the decision. Thank you, Justice. Sorry, I forgot to let you all know that. I was also, I don't know if you would call it the trial counsel, but I was the counsel for WISAM 1 before the local liquor commission. And it was the strangest proceeding that I've ever been in because while it was noticed up to be a hearing and while at the beginning of the proceeding the local deputy liquor commissioner Eric Turner said it was going to be a hearing, it quickly turned out that it wasn't going to be a hearing at all. If you go to page C-43 in the transcript of that local liquor commission hearing, as soon as Mr. Turner said, are you ready for witnesses' testimony, the counsel for the city then said, well, we're asking for a directed finding that there was a violation of section 3-28 of the local ordinance. And then Mr. Turner says, well, wait a minute, I'm going to leave the room for a few minutes and I'll come back. And then Mr. Turner left the room and then he comes back and he says that he's talked to some lawyer inside City Hall and the lawyer inside City Hall told him, go ahead and rule on liability against the license holder and go ahead and leave the room. And he said, go ahead and admit all three volumes of the federal transcript into the proceeding. And that's what he did. Then we were trying to figure out what to do in that kind of circumstance, or I was, and I did make an objection for the record about how these transcripts did not meet the former testimony parameters of admitting transcripts on the whole. But at the same time, when these transcripts were offered, they were not offered as to any specific pieces of evidence inside of them. They were offered on a wholesale basis that here are the transcripts from the federal proceeding. And so we've cited the Gondar case in our brief, which is a 4th District case from 1986, 149-3627, where the court said that if somebody objects to former testimony coming in on a proceeding, then you have to actually have the live witnesses appear. And you cannot have the wholesale admission from a prior proceeding or another proceeding come in through transcripts, because that's violative, the court holds in that case, of due process. And so we're also accused in this of, when I was trying to sort of think on my feet when this happened, with Mr. Turner saying, well, you lose, I also brought up the fact that I thought that they were going to be relying on collateral estoppel, even though they weren't saying collateral estoppel when they were saying what the effect of this was. But they were saying that because of the prior federal proceeding in which an employee of the licensee had been convicted by a jury, that that somehow bound the employer in this case, and we could not present a defense then. They didn't say it stopped, but we were stopped from presenting a defense on liability. And so I laid the record as best as I could on an offer of proof. I said that we had, in the federal proceeding that they were relying on so heavily, that there had been a contention that there had been insurance coverage in the amount of $10,000 per cash on hand. And that, while that was stated during the federal proceeding, nobody ever brought any evidence in one way or the other on the federal proceeding about whether those insurance documents in fact existed or what they said. And I said, well, I've got those insurance documents with me today. I've procured them. And so our defense was going to be, in front of the City Liquor Commission, that there was a non-IRS or a non-federal reason for us to try to keep the amount under $10,000 of cash on hand at the store. Because if somebody came in and robbed the store and stole the cash, if it was more than $10,000, that wouldn't be covered by insurance. And we presented numerous pages of insurance policy declarations showing that to be the case. But then, when I offered those into what I thought would hopefully be evidence, and maybe we would get a hearing rolling on the issue of liability, the city attorney then said, well, again, the fact finders in the case, this is a C-46. The fact finders in the case, the federal jury, made the determination and made the fact-finding decision that Mr. Micasod violated the federal crimes as indicated. And then, for clarification, Mr. Turner says yes. I talked about whether it's a conviction or not, and I think everybody agrees that it's just a finding by a jury at that point. And then we say that we tried, we were subpoenaed to testify, the owner of the business, but never called. And so, again, they're not saying collateral estoppel, but it's the same as collateral estoppel. And in the briefs on appeal, it's been the same way. So, where they'll respond to an argument of ours, they'll say, well, they tried to raise that at the Liquor Commission level, but that's not what the federal jury decided. So, even if they don't use the words collateral estoppel, I think that's what they're trying to do, and the elements of collateral estoppel have not been met here. We don't have anywhere close to the same party in the federal case as the Liquor Commission case. The licensee's different. In fact, if you want to see the exact point that I'm making here, on page SA6 of the Attorney General's brief in this case, they have attached the Illinois Administrative Code when it comes to state Liquor Commission hearings. And under section 100.30 sub B, their own rule says, violations may be proved by evidence that the licensee has been convicted of a violation of a federal law, etc. And so, essentially what we're saying in this case is that if you had a conviction of a licensee, sure, there would be collateral estoppel. You couldn't try to say it wasn't true. But where you never had the opportunity to participate in that proceeding if you're the licensee, you're not bound by it, and there is no preclusive effect that you're bound by. Now, the fact that the federal proceeding happened, that's not disputed. We didn't dispute that. We stipulated that there was an indictment in the federal proceeding, and that there was a finding of guilt against the former employee. But never was it stipulated that the guilty verdict was correct, and never was it stipulated that the licensee engaged in the conduct in question. And the fact that we had a defense, this insurance, was inartfully presented, we think, in the federal case. Because if you go over the transcript for the federal case, the federal prosecutor gets up at the end and he's making his closing argument, and he says, where are the insurance policies? Why haven't they admitted those into evidence? You know, if that's their excuse for keeping things below $10,000. And as we pointed out before the local liquor commission, for the first time, somebody had asked the insurance agent for those papers when we were going into the hearing. So the people who represented the former employee didn't present that at the federal trial. So we thought we should have had a trial on liability. What it turned into was a trial on the penalty, what was going to be the penalty. And then at the penalty phase, I think there was a term called scapegoat that I think comes from the Bible, all the sons of Israel being heaped on the head of a goat and buried in the desert. And I think that then the penalty phase was trying to blame everything that happened within a mile of my client's business on my client. That there was litter, that there was alcohol, there was people who were throwing beer bottles into yards and things like that. And then that was the penalty phase, but that was not the liability phase. We were allowed to present evidence in the penalty phase and question witnesses, but we sure weren't allowed to question any witnesses when it came to the liability phase. So we would simply rely on cases such as Nye, which we have cited in our brief, where a trial procedure was cut short, like ours was, and was found to be so lacking in the fundamental principles of our system of justice that the procedure had to be condemned as a denial of justice. Where in the Cole Quick case we've cited, C-O-L-Q-U-I-T-T, where the student statements were admitted, the students didn't testify at the disciplinary proceeding, and that was found to be a violation of due process. All of these people who testified at the federal trial, none of them testified at this proceeding. It was all strictly this effort to submit these transcripts as what I thought they were trying to submit them as anyway was former testimony. Now they never tried to offer any statements on a one-by-one basis or any evidence. It was a wholesale admission attempt into evidence of the transcripts. So we never really got to whether any one statement was admissible or not. But the fact of the matter is that in none of these cases of former employees was there any factual predicate that they were working for the corporation that was the licensee at the time they testified in federal court. Now under the new rules of evidence in Illinois, under rule 801-D-2-D, it is permissible under 801-D-2-D to admit statements of employees, but the rule is very, very specific. It says that it has to be a statement by a person authorized by the party to make a statement concerning the subject or a statement by the party's agent or servant concerning a matter within the scope of the agency or employment. Quote, made during the existence of the relationship. In the case of one of the parties that they've been relying on as being within the scope of employment, a person whose name was Jamal, J-A-M-A-L-Z-E-I-D, he testified in the federal case that he had worked there 10 years before the trucker. And he was testifying on the basis of what had happened 10 years earlier about check cashing and about what was done with these $10,000 amounts. And then with respect to the other two, Mike Asad, who was the defendant in the criminal case in federal court, and Ashraf Ali, there was no presentation in the federal record that they were still employed there. So under no circumstance did they lay a predicate for 801D2D. When we went before Judge Brandt, he then raised the issue about whether the accountant in Judge Brandt's ruling, whether the accountant's testimony for the business that was given in federal court could come in as a presentation and whether the tax returns could come in and everything. So if you type in the words judges and truffles and pigs into Westlaw, you'll find that the federal courts are quite fond of the saying that says that judges aren't expected to look in the record like pigs are looking for truffles. I found that in one appellate case in Illinois, that saying, but in federal court it's said many times. Well, we shouldn't be expected when they admit three volumes of transcripts to try to guess which things the accountant, the guy that worked there 10 years earlier, and what we're supposed to contend with. And that's the reason why former testimony like this is unfair to admit in a case unless somebody agrees to have it admitted, which is what the Gondar case talks about. Thank you. I have a question. There were some stipulations of fact at the beginning of the hearing before the Peoria Commission, is that correct? Yes. And one of those stipulations was that Mike was acting as manager or employee or agent of Sheridan Liquors at all dates and times? I think it said at the times in the indictment, but let me look just to make sure I brought that up with me. At the dates and time as indicated in the notice of charge, which I think is the period of the indictment, that he was acting as manager, employee, or agent. But I don't think that it was related to the time of the trial, which would be the 801 D2D issue, if that's what you're driving at. But we did say that he had been a manager, an employee, or agent at the times indicated in the notice of the charge, which I think incorporated the indictment. So that he had been acting as an employee and an agent at the times that were involved in the underlying complaint? That's right. And we also stipulated that the indictment was a true and correct copy and that he was, in fact, found guilty by the jury. But our position was that we're not bound by that because we're the licensee, not the employee, and we should have our own chance to litigate it. We weren't able to cross-examine the witnesses in federal court, nor were we able to present that insurance information in federal court that seemed to be, in the federal proceedings, seemed to be an either or deal. Either you were doing the $10,000 because you were trying to cheat the IRS and the government, or you were doing it because of the insurance. And our side, in that case, I guess, didn't present anything about the insurance. And administrative agencies don't have any full faith and credit? I think they do to some extent. They could have preclusive effect if the person who's convicted of something is then coming into an administrative proceeding with a lesser standard of proof than beyond a reasonable doubt. Well, I think that transfers. So if I get found guilty in a criminal case beyond a reasonable doubt, and now, let's say the ARDC is trying to say that I should lose my license under a preponderance standard, I think that would transfer because it's a lesser standard of proof. But if it's because an associate who works for me did something, and he got convicted of something, and they're contending that I didn't watch him close enough or something, I think that transfers. I think they've got to prove that he actually did it, if I don't stipulate to that. Otherwise, it would be preclusive effect, and that's not fair where you never had a chance to contest it. Thank you. Mr. Turner, good afternoon. Thank you, Your Honor. I'm Christopher Turner, the Assistant Attorney General here on behalf of the defendant, Natalie, Illinois Liquor Control Commission. This Court should affirm the State Commission's decision revoking Wissam 1's license because there's sufficient evidence in the record to support the finding, the local commission's finding, that Wissam 1 had violated Section 328 of the Peoria Municipal Code. That's really the issue here, is whether or not there was sufficient evidence. Contrary to the characterization by counsel for Wissam 1, there was a full hearing for the commissioner. They were permitted to put on whatever evidence they wanted. But wasn't that after the attorney, or the commissioner, leaves, steps down, goes out into the hallway to speak to another, to an attorney, presumably for the City of Peoria. The transcript even says that because he couldn't talk to Ms. Williams, he was going to talk to somebody else. Comes back, makes his determination, or his finding of liability, and then they put things on as an offer of proof. You're correct that the commissioner did, at the beginning, early on in the hearing, did find that there was a violation of 328. It wasn't final finding. It was not like the Gondar case where there was a directed verdict, trial was over. Counsel immediately said they wanted to provide, they still wanted to provide their case, they wanted to provide their evidence. At C44 to C45, it was evidence. He says, that's fine, you can put whatever information you want. Again, I think at C50, after they've had some further argument about it, counsel says, well, I want to make my case here. And the counsel and the commissioner said, yes, you can go ahead and do that. Indeed, right immediately at that point, the counsel for Wissom 1 entered their exhibits, the insurance policies. And then when their case started, because they were defendants in that case, it was later in the hearing, they put Wissom 1's owner, Adnan Asad, on. And the first thing he testifies about are the insurance policies and their defense against the claim that they had, well, they had violated section 328 because their employer agent, Mike, had engaged in prohibited activity on the premises. So they were allowed, they had full opportunity, there was no restriction on their ability to submit any evidence, any testimony that they wanted. In fact, there was no indication it was an offer of proof. When an offer of proof was actually offered later on in the hearing at C105 to C106, at that point, there was a piece of evidence that was objected to. It was the signatures on a different issue related to the revocation. It was sustained based on foundation. And then counsel for Wissom 1 said, well, I'd like to still offer it in as an offer of proof. And the commissioner said, yes, fine, that can be entered into the record as an offer of proof. But that is not what happened when he was providing his evidence and his defenses. There was a finding that he did make a factual finding, but it was never a collateral estoppel. It was never preclusion. It was never precluding him from putting on any defenses he wanted. Indeed, if you go back then at C147, the very end of the hearing, then the local commissioner says, okay, I'm going to look now at all the information that's been given. I'm going to issue my order based on that, which is what he did. So counsel, they had a full opportunity to provide their entire case there. There was no estoppel of any kind. And indeed, the city was never actually arguing that there was estoppel of any kind. They were putting in the stipulations, which had the indictment attached as an exhibit to it, and where the indictment was stipulated to, as proof of the violation occurring and that the violation occurred, at least in part, in or about the premises. And based on that information, consistent actually with their own rules and regulations, the state commission's rules and regulations, the commissioner then found, yes, that's sufficient proof. The indictment doesn't, it talks about the transactions occurring at the financial institution, does it not? No, Your Honor, it doesn't. It does, of course, mention the bank. That's where the withdrawals occur themselves from. Deposits and withdrawals will occur at the bank. But the underlying violation of federal laws, the violation of the anti-structuring provisions of the Bank Secrecy Act, the federal courts have made clear, the cases we cite, Davenport, McPherson, and on, the actual violation is not the individual withdrawals themselves. It's the structuring of the transactions. You're breaking up a cash hoard, whatever the large cash is, into little bits. Certainly, part of that violation will occur at the bank in the forms of withdrawal. But the other parts of that, of breaking it up, writing the checks, instructing people to keep it under $10,000, that's all part of the violation as well. That is the effort to alter the transaction in order to evade the reporting requirements of the bank. I read the indictment and it never says anything other than the address, this is out of the branches of, branch at which check cash. It doesn't, it speaks about their bank account, Sheridan Liquor's bank account in each of the counts. It doesn't talk about, it talks about Sheridan Liquor, the bank facilities that are near Peoria, Illinois. So I know that you said it's a stipulation that in fact, it occurred, but it's not, none of this indictment, the indictment itself, no cases attached to it, nothing else. It says nothing about the location of Sheridan Liquors. It says nothing about the licensee. What it does charge, what it does charge, and they stipulate it was convicted as charging a complaint, of going on an almost two-year conspiracy with, so it's a two-year long conspiracy to make these structured transactions, where he was involved, it was with, directly with the manager of Sheridan Liquors, and yes, it was on the account, and it was using Sheridan Liquors finances, carrying out actually four, and if you look at page, it's C173, so it's page three of the indictment. It then goes through that conspiracy, providing the facts underlying that conspiracy, that they were involved in the management and operation of liquors, that there was operating a check cashing operation, and in order to finance that check cashing operation, they were making these withdrawals. If you look at D, E, and F there, that's the conspiracy. Now, it does not say that it must have happened at Sheridan Liquors, however, it is at the very least a reasonable inference. It's some part of that two-year conspiracy, whether it is the agreement themselves, the ongoing agreement, to make sure that those withdrawals are being kept under $10,000. But if they're stipulated to an inference, I mean, wouldn't that have to be spelled out? I mean, if I read that this is a stipulation, I'm not stipulating to an inference, I'm stipulating to what's written directly in this document. Your Honor, we don't argue, and no one has argued, that they stipulated to the Sheridan Liquor violating the ordinance. That was a finding made by the local commissioner based on the stipulation, a reasonable inference based on the stipulation. They did stipulate that Mike was convicted and found guilty of these charges, including a two-year conspiracy. There's a big argument in all of this regarding whether or not their stipulation was to a finding of guilt by a jury or a conviction. And I don't see anywhere where the stipulation says that the WSUM 1 stipulates to a conviction. I think it's the trial transcripts that were entered under that stipulation, but there is no stipulation as to what that means. And that, I think, is where there's a little breakdown, and when there's no cross-examination and no opportunity to put those people on that were actually making that testimony is where you run into some problems. Well, Your Honor, there's two separate pieces of evidence here. The third stipulation, number three, is that he was found guilty and convicted by the jury. And they recognize that conviction doesn't have to occur at the end when the final judgment is entered. Conviction, actually, if you look at the federal rules of criminal procedure under which Mike Assad was convicted, the judgment, Rule 32 on judgment, that's a post-conviction procedure. Conviction, as it's commonly understood, happens when there's a finding of guilt, whether it's by the jury or by, in some cases, there'll be a bench trial. And if you look at the State Commission's own rule, that 30B, which we cited, that shows that, yes, that's not a finding saying that a conviction is preclusive. It says that a conviction is evidence, sufficient evidence, to find that a violation occurred. That is, the State Commission... The conviction of a licensee, which we don't have here. We don't have a conviction of a licensee. I'm sorry, Your Honor, but that's really a red herring there, because they were, the violation was of the ordinance, 328, which says clearly that it could not only be a violation of the ordinance, the licensee, but any of their agents, employees. And, well, they never really argued that, oh, no, it was the reason that we're not guilty here is because it wasn't the owner of the licensee himself who committed these violations, it was our employee. Because if they'd argued that, there's a lot of case law that says, under the act itself for a violation of the licensee is strictly liable for the acts of their employees. And particularly when they're doing it within their job, within the scope of their job, which here, of course, they admit. They dispute that there was actually, they were evading the reporting requirements, but they don't admit it was a store policy to keep less than $10,000 and to not take out more than $10,000. So that was, you know, so it was very, there was never been any argument that that's the deciding issue here, that it was the licensee versus the... Sorry, the licensee versus the employee who had committed the federal violations. Could I make one more point around here on that? Very briefly. If you do believe that there's a due process violation, please remember that even though they asked for reversal, it's reversal and a remand for further proceedings, which would be consistent with the courts, and that is provide them with a procedural due process. Thank you very much. Thank you, Mr. Turner. Ms. Williams? Good afternoon. Good afternoon. Thank you, counsel. Good afternoon. My name is Sunny Williams, and I represent the local liquor commissioners, Mayor Jim Artis and Eric Turner, as well as the local liquor commission and the city of Peoria, the co-employees in this case. Since Mr. Turner has been here, I'm going to state to this court that this court has to look at the whole record and whether the findings of the state liquor commissioner is against the benefits of the evidence. Well, let's look at the whole big picture, and this is outside of even the federal transcript. The findings were, as Justice O'Brien points out, there is a part of the hearing in which the liquor control commissioner, Eric Turner, does go downstairs and comes back up with a ruling. But this is done after the admission of the stipulation and also the indictment that's attached to the stipulation. And again, the licensee was charged with violating 3-28 of the Code of City of Peoria. Not necessarily the actual, there's no necessity of the actual conviction of the federal crime to be considered to be in violation of Section 3-28 of the City Code. And the City Code prohibits any employee, the licensee, this agent, or employees from violating anything or committing any of the offenses that are criminal offenses, state offenses, and federal offenses, in this case federal offense. So let's look at the big picture, the whole record. Now, the stipulations, they state that Mike Assad, at all times, and this is, you know, the appellants are not contesting that Mr. Assad was found guilty of violating the federal crimes in which he was charged for structuring the transactions to be under $10,000. In fact, Mr. Adnan Assad, the owner of Sheridan Liquors, he admits that the transactions were done. And he admits that they were done at Sheridan Liquors because of insurance purposes. So there is no dispute that the transactions were done, were structured to be under $10,000. Mr. Adnan Assad, his defense is, well, we can't have any cash under $10,000 and that's why we structured those transactions that way. So that may be, well, you know, that's his defense, but it's not, you know, the Deputy Liquor Control Commissioner and the state didn't necessarily have to buy that defense. And that defense almost, you know, hurts the appellant more than it helps. Now, the other stipulation is that, of course, Mr. Assad was found guilty of structuring the transaction to evade the reporting. And also, all the criminal offenses in which Mr. Assad was convicted of all related to the transactions in the business of Sheridan Liquors. So with those stipulations alone and Mr. Adnan Assad's own admission, the structuring and the conspiracy to structure already occurred at Sheridan Liquor. It all related to Sheridan Liquor. And when the indictment states that this, it goes through the motive of why they would want to structure this. And the ill motive that they proved in the federal case is that they wanted to evade reporting. And so therefore, because Sheridan Liquors' primary business was liquor sales, a little bit of grocery, and also cash checking, in order to get that money flowing in for the cash checking business, they have to make sure that, you know, plenty of money was coming in. But they also knew, and Mr. Assad did, Mr. Mike Assad did, that they had to be under $10,000. And just common sense would think that if your cash is only covered for a $10,000 store, why in the world are the deposits and the withdrawals very close to $10,000, but not quite there yet? I mean, you would think that, you know, being $1 over, or $100 over $10,000, you know that the $100 is not covered or not covered. Or $5,000 over $10,000 isn't covered, you would think some of their, you know, deposits or transactions would be at less than $5,000. And most people, when they're depositing something, you don't bring a big $50,000 bag of money and then all of a sudden go, no, you need to put it in this cash bag over $10,000. Everything is done at Sheridan Liquors, and that's all inference that could be taken from the indictment, the stipulation, and also Mr. Adnan Asad's admission. What specifically did he admit? Mr. Asad admitted that would be under C101, line 1, and this is when he was being questioned by Mr. O'Day, yes, up to $10,000, and that's Mr. Adnan Asad. Did you ever try to stay under $10,000 for the money in the store? Answer, did I ever try? The question is, try to keep less than $10,000 on hand in the store. Yes, what was that? Because the insurance purpose and the safety purpose. So he admits that that's how they were structuring the transactions at Sheridan because of the insurance, the insurance policy that covered cash up to $10,000 for the store, and they were afraid to get robbed at the store and not have anything covered for anything over $10,000. Yes, thank you. So besides the transcript of the federal indictment in which, again, Mr. O'Day likes to bring in collateral estoppel, nobody mentioned collateral estoppel at the local level or the state commission. That's something that Mr. O'Day, in his own opinion, occurred, and that's why we are, he's trying to lead the court down to what is considered to be a federal conviction, and I don't think that's relevant in this case. It's by stipulation, by admission by Mr. Adnan Asad and by the indictment alone that is sufficient, and coupled with what the transcript does is it brings that inference more, that everything, the conspiracy did occur with Sheridan. Sheridan Liquors was instrumental behind the motive and the method in committing this crime, and Mr. Mike Asad was convicted of it, and that shows the direct violation of Section 3-28 in which no licensee or his agent or employee shall violate any laws, and that includes federal laws. So we believe that there's sufficient evidence in the record to indicate that Mr. Asad, I just want to get something very clear, that any violation of anybody that's convicted of federal law, any licensee or their agent or employee will bring the ordinance as to the licensee. Yes, I mean that's a violation of Section 3-28. I don't know if you and I are going in the same direction. So the violation of federal state law doesn't have to be related to the facility at all. If you have a convicted misdemeanor or felon that works for you, you are subject to license revocation in the City of Peoria under that ordinance. No, that's not the case. In this case, it was related to Sheridan Liquor. But I want to see in your ordinance where it says licensee or anybody else, and I don't see that in the ordinance itself. To 3-28, I believe the appellant included that, but that's for... And as to the question of some employee having a conviction, here it is, 3-28, no licensee or any officer, associate, member, or representative shall engage in any activity or conduct to suffer or permit any person to engage in any activity or conduct on or about the licensed premises which is prohibited by any ordinance or the law of the state or the United States. In this case, Mr. Mike Asad violated the federal offense of structuring the transactions to date reporting. And the structuring that was submitted by Mr. Adnad Asad to occur, it occurred at Sheridan, and the purpose was because their insurance didn't cover over $10,000. That was his innocent explanation of it, but that wasn't... And again, the trier of facts is you can buy it or not buy it, and in both the local level and the state level, they did not buy that defense. And the indictment states that Sheridan Liquor was the means and mode of this violation. It's not like Mr. Mike Asad was convicted of structuring the transaction for his own personal use, his own personal account, but this is the cash registered money out of Sheridan. They structured it where they took $10,000 to either... So this is all Sheridan Liquor. The charges that Mr. Mike Asad was found guilty of was all related to Sheridan Liquor, and that's why Section 3-28 of the city code was violated. Just one more question, Ms. Williams. Is it your contention that there was sufficient evidence apart from the transcript to support the finding? I believe there is, and I think what the transcript does is to bolster the inference that the conspiracy occurred inside Sheridan. But Mr. Adnan Asad on his own, when he was questioned by his counsel, admitted that they did structure those transactions, but for him he said that there was an innocent explanation of that. So they're not denying that they were structuring these transactions and they were doing that to protect the cash on hand in the store. That would be an inference that the structuring of the transaction occurred at Sheridan Liquor. Thank you. Mr. O'Day, rebuttal. Here the fact is that nobody all the way up to this court has ever referred to those insurance papers that we put into the record and made any kind of a determination about whether or not the insurance explanation was valid or not. At the criminal jury trial in federal court, that was an issue that went back and forth, and it was debated and everything, but when we offered that, we tried to admit the insurance papers into evidence. Those are at pages C590 to C607 in the record, the insurance policy declarations. The local liquor commissioner never said they were admitted into evidence. When we offered to admit them, then there was an objection that were precluded. The Illinois Liquor Commission, I don't think, ever referred to those insurance papers in their decision, and then when it got to the circuit court, the circuit court denied that they were even in the record, the insurance information that we had presented. He had apparently not found them in the record, even though we had asserted that they were there. So they were not admitted into evidence, and they were never considered by anybody, because right before we offered those, there was a finding of liability, and that was that. Now, I tried to fight back against this finding of liability and to make whatever offer of proof I could, but even when I asked to admit it after the finding was made, I was stymied. Maybe I didn't do things artfully enough, but I had never faced a situation before where I was told at the beginning of the hearing, well, we're not going to have the hearing because we're finding guilt right off the bat against you. The city ordinance defines premises. The city ordinance here defines premises to mean an area within a building where liquor is actually used, where the area is actually used in connection with storage preparation and sale of alcoholic liquor. It doesn't include an office where the public doesn't go, where liquor is not sold, where the sale of liquor doesn't occur, where liquor is not stored. Because of the definition of premises in the city ordinance, it doesn't suffice to just say that it happens inside a building or it relates to the business. It's a very specific definition about what premises encompass. We've cited the Flamboyant case, Daly v. Flamboyant, which was a case where the appellate court went into excruciating detail, because Chicago had an ordinance that defined premises pretty close to this, about whether a storeroom that held liquor satisfied the word premises for purposes. I think they had drugs or something that they found in there. It is an issue, and they have used the transcript to try to show that things happened on the premises, and they've offered that for the truth of the matter asserted. I think what they're asserting is since it was the income or the money from the cash registers at Sheridan Liquors that by virtue of it being in there, that satisfies their honor about it. That money had to have been in that business, and had to be taken out of those registers and put into some kind of a bag. I don't think that Congress, the United States Congress, can really regulate check cashing at a cash register at a liquor store in Peoria, Illinois. I disagree with the portrayal of these currency transaction reporting requirements as not being at the bank. In fact, I think the federal prosecutors recognized that it's at the bank when they structured the indictment, and they said that's where the offense happens. The IRS does not investigate violations of the Illinois check cashing statute, which seems to be suggested here as the motive for the structuring, so that people wouldn't find out about the check cashing that was going on, that supposedly they're charging too much for the check cashing or they didn't have a license. They didn't have a license. They didn't need one because they were a merchant. I'm not sure how the IRS dovetails with the Illinois check cashing statute. If you look at the Illinois check cashing statute, there's no remedy at all. There's not a penalty provided. There's not an administrative agency suggested to enforce it, and certainly not the IRS, so I don't know how this check cashing has ever figured into it, but my point simply is this. Why don't we go back and have a hearing where all of this can be rehashed and we can talk about, well, what would the IRS have to do with the Illinois check cashing statute, where we can talk about the definition of premises and where we can talk to the witnesses that they're supposed to call and ask them, where did things happen? Did it happen in the office? Did it happen in the building? Did it happen at the bank? What exactly was said about this $10,000? We can submit the insurance information as well. We're not asking for you to convey a victory on us. We're asking for a fair hearing. Thank you. Thank you. We thank all of you for your argument this afternoon. We'll take the matter under advisement with Justice Baldrige participating, and we'll render a decision as quickly as possible. The court will now stand in recess until October.